AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT

for the
District of Columbia  ▾

| | |
|---|---|
| Jamie L. BROWN | ) |
| | ) |
| | ) |
| *Petitioner* | ) |
| | ) |
| v. | ) |
| | ) |
| FRANK KENDALL III, Secretary of the Air Force; THOMAS SHUBERT, President, Air Force Clemency and Parole Board | ) |
| *Respondent* | ) |
| *(name of warden or authorized person having custody of petitioner)* | |

RECEIVED
Mail Room

JAN 18 2022

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Case: 1:22−cv−00147
Assigned To : Cobb, Jia M.
Assign. Date : 1/18/2022
Description: Habeas/2255 (G−DECK)

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1. (a) Your full name:  Jamie L. BROWN
   (b) Other names you have used:

2. Place of confinement:
   (a) Name of institution:  n/a
   (b) Address:  87112 Hwy 59 Stilwell, OK 74960

   (c) Your identification number:  n/a

3. Are you currently being held on orders by:
   ❑ Federal authorities        ❑ State authorities        ☑ Other - explain:
   Military parole

4. Are you currently:

   ❑ A pretrial detainee (waiting for trial on criminal charges)
   ☑ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
   If you are currently serving a sentence, provide:
      (a) Name and location of court that sentenced you:  Court-martial convened by order of Commander
      Headquarters, Ninth Air Force
      (b) Docket number of criminal case:  n/a
      (c) Date of sentencing:  03/22/2019
   ❑ Being held on an immigration charge
   ❑ Other *(explain)*:

### Decision or Action You Are Challenging

5. What are you challenging in this petition:
   ❑ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

☐ Pretrial detention

☐ Immigration detention

☐ Detainer

☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☐ Disciplinary proceedings

☑ Other *(explain):*    Due process violations in the court-martial.

6.    Provide more information about the decision or action you are challenging:

(a) Name and location of the agency or court:    n/a - courts-martial are temporary tribunals.  The court-martial which tried me no longer exists.

(b) Docket number, case number, or opinion number:

(c) Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed):*
Findings and sentence.

(d) Date of the decision or action:    03/22/2019

### Your Earlier Challenges of the Decision or Action

7.    **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☑ Yes          ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:    Air Force Court of Criminal Appeals

(2) Date of filing:

(3) Docket number, case number, or opinion number:    United States v. Brown, 2021 CCA LEXIS 414

(4) Result:

(5) Date of result:    08/16/2021

(6) Issues raised:

(b) If you answered "No," explain why you did not appeal:

8.    **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☑ Yes          ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a)  If "Yes," provide:

    (1)  Name of the authority, agency, or court:   Court of Appeals for the Armed Forces

    (2)  Date of filing:

    (3)  Docket number, case number, or opinion number:   2022 CAAF LEXIS 8

    (4)  Result:   Grant of Review denied

    (5)  Date of result:  01/05/2022

    (6)  Issues raised:

(b)  If you answered "No," explain why you did not file a second appeal:

9.  **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes                    ☐ No

(a)  If "Yes," provide:

    (1)  Name of the authority, agency, or court:

    (2)  Date of filing:

    (3)  Docket number, case number, or opinion number:

    (4)  Result:

    (5)  Date of result:

    (6)  Issues raised:

(b)  If you answered "No," explain why you did not file a third appeal:

10.  **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes                    ☑ No

If "Yes," answer the following:

(a)      Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

    ☐ Yes                    ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

(b)  Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes          ☐ No

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

(c)  Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence:

_____

_____

_____

_____

_____

11.  **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes          ☑ No

If "Yes," provide:

(a)  Date you were taken into immigration custody: _____

(b)  Date of the removal or reinstatement order: _____

(c)  Did you file an appeal with the Board of Immigration Appeals?

☐ Yes          ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Date of filing:

(2) Case number:

(3) Result:

(4) Date of result:

(5) Issues raised:

(d)   Did you appeal the decision to the United States Court of Appeals?

☐ Yes                    ☐ No

If "Yes," provide:

(1) Name of court:

(2) Date of filing:

(3) Case number:

(4) Result:

(5) Date of result:

(6) Issues raised:

12.   **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes                    ☒ No

If "Yes," provide:

(a) Kind of petition, motion, or application:

(b) Name of the authority, agency, or court:

(c) Date of filing:

(d) Docket number, case number, or opinion number:

(e) Result:

(f) Date of result:

(g) Issues raised:

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Grounds for Your Challenge in This Petition

13. State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:**   Court-martial findings unconstitutional because the panel did not vote unanimously.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(b) Did you present Ground One in all appeals that were available to you?
☑ Yes          ☐ No

**GROUND TWO:**   Court-martial panel instructions violated Petitioner's due process rights.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(b) Did you present Ground Two in all appeals that were available to you?
☑ Yes          ☐ No

**GROUND THREE:**   Military Judge's Mil. R. Evid. 412 ruling violated Petitioner's due process rights.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(b) Did you present Ground Three in all appeals that were available to you?
☑ Yes          ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:**

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(b) Did you present Ground Four in all appeals that were available to you?
❏ Yes          ❏ No

14.   If there are any grounds that you did not present in all appeals that were available to you, explain why you did
not:

**Request for Relief**

15.  State exactly what you want the court to do:  Grant to Petitioner requested writ and grant other such relief as may be
appropriate, to include costs.

**Declaration Under Penalty Of Perjury**

If you are incarcerated, on what date did you place this petition in the prison mail system:

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date:        01/17/2022

_Signature of Petitioner_

_Signature of Attorney or other authorized person, if any_





SCREENED BY
U.S. MARSHALS
JAN 18 2022



XE TSGA

TRK# 2888 2683 5540
0201

TO ATTN: CIVIL CLERK
US DISTRICT COURT FOR THE DISTRICT
333 CONSTITUTION AVE NW

WASHINGTON DC 20001

REF: 0129161

ORIGIN ID:PVA   (479) 524-9777
ORTEE BROWN
C/O US POSTAL EXPRESS
STE A
904 E OLIVE ST
SILOAM SPRINGS  OR  72761
UNITED STATES US

SHIP DATE: 18JAN22
ACTWGT: 0.20 LB
CAD: 254-65101/WSXI13700

BILL SENDER

TUE - 18 JAN 4:30P
STANDARD OVERNIGHT

20001
DC-US    IAD



FedEx
Express

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JAMIE L. BROWN
87112 Hwy 59
Stilwell, OK 74960;

       Petitioner,

   v.

FRANK KENDALL III
Secretary of the Air Force
1670 Air Force Pentagon
Washington, District of Columbia 20330-
1670

THOMAS SHUBERT, President, Air Force
Clemency and Parole Board
1535 Command Drive EE
Wing 3rd Floor
Andrews AFB, MD 20762

Respondents.

Civil Action No.

# PETITION FOR WRIT OF
# HABEAS CORPUS UNDER 28 U.S.C. § 2241

## INTRODUCTION

1.   Jamie L. Brown [hereinafter "Petitioner" or "Mr. Brown"] hereby petitions this Court for a writ of habeas corpus to vacate his court-martial convictions for sexual assault and attempted sexual assault under Articles 80 and 120, Uniform Code of Military Justice (UCMJ) [hereinafter "Article 120"]. **Petitioner requests oral argument as to the Petition.**

2.   The court-martial panel which tried Petitioner returned findings in violation of the due process clause because the Military Judge permitted the panel to return its findings by less than a unanimous verdict.  Its findings were therefore void.

3.   The military judge violated Petitioner's due process rights by instructed the panel as to actual non-consent and to incapacity by sleep, both of which were uncharged theories of misconduct.

4.   The military judge violated Petitioner's due process rights by utilizing Military Rule of Evidence [hereinafter Mil. R. Evid] 412 to exclude constitutionally required evidence.   Petitioner will move to file his claim involving this matter under seal, because the military judge sealed the relevant portions of the record.

I.       **PARTIES**

     5.     Petitioner Jamie L. Brown is currently subject to the terms of mandatory supervised release on parole pursuant to the approved sentence to confinement of a court-martial.

     6.     Respondent Frank Kendall, III is the Secretary of the Air Force and holds discretionary power to terminate the Mr. Brown's supervised release.  Art. 74, UCMJ.

     7.     Respondent Thomas Shubert is President of the Air Force Clemency and Parole Board and has delegated authority from the Secretary of the Air Force to set or modify the terms and conditions of Mr. Brown's supervised release. Air Force Instruction 31-105, *Air Force Corrections System* (12 April 17), para 12.9

     8.     The Rules Governing Section 2254 Cases in the United States District Courts [hereinafter "Habeas Rules"] are also appropriately applied to proceedings undertaken pursuant to 28 U.S.C. § 2241. Habeas Rule 1(b).  Pursuant to those rules, the president of a parole board is a proper respondent if a Petitioner is a parolee. *Sells v. Nev. State Bd. of Parole*, 2017 U.S. Dist. LEXIS 109489 (D. Nev. July 14, 2017) (unrep.).

II.      **JURISDICTION, VENUE AND STANDARD OF REVIEW**

     9.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 2241, 1651, and 1331. *Witham v. United States*, 355 F.3d 501, 505 (6th Cir. 2004) (28 U.S.C. § 2241 "applies to the military prisoner, because the court-martial

immediately dissolves after sentencing and is no longer available later to hear a collateral attack on the sentence."); *Clinton v. Goldsmith*, 526 U.S. 529, 537 n. 11 (1999) (a "servicemember in custody… is entitled to bring a habeas corpus petition, see 28 U.S.C. § 2241(c)…").  Although Mr. Brown entered parole in 2021, he remains in custody for the purposes of this court's *habeas* jurisdiction because he is a parolee.  *Ramsey v. United States Parole Comm'n*, 840 F.3d 853, 859, n. 2 (D.C. Cir. 2016).

10.    Venue in the District of Columbia is proper because respondent Secretary of the Air Force is present therein.  A service secretary is considered present within the federal district for the District of Columbia because he performs a significant amount of his duties there.  *Smith v. Dalton*, 927 F. Supp. 1, 5-6 (D.D.C 2004).    Respondent Secretary of the Air Force is therefore present for venue purposes within the District of Columbia.

## III.    FACTS

### A.    The charged incident.

Nicole McCleary, the named victim in this case, served in Korea in 2017 at Osan Air Base.  (R. at 547).  She married Timothy McCleary, whom she had met at her previous assignment in Italy.  (R. at 546).  Nicole McCleary and Timothy McCleary were not assigned to the same airbase and could see each other only on weekends.  (R. at 546).  Petitioner met Nicole McCleary at the all-ranks club on Kunsan Air Base.  (R. at 547).  Petitioner invited Nicole McCleary and her

husband to a cookout for his going-away party, as Petitioner was scheduled to leave Korea. (R. at 548). Nicole McCleary did not attend Petitioner's going away party, but subsequently discovered that she and Petitioner were present in the Songtan Entertainment District (SED). (R. at 549). Nicole McCleary invited Petitioner to meet for a drink in the SED. (R. at 592). Specifically, she texted Petitioner and said "[s]o tell me you're out on the SED so I can get you a drink for not making it on Saturday." Pros. Ex. 1.

Before meeting Petitioner. Nicole McCleary and several co-workers were present at a restaurant called Ceviche in the SED, where she and other co-workers had dinner for a going away party. (R. at 553-54). Nicole McCleary arrived at Ceviche around 5:30 P.M. (R. at 589). Nicole McCleary had, at most, one alcoholic drink at Ceviche. (R. at 554). She left Ceviche around two hours later and then walked to a bar called Kelly's, which had billiards tables. (R. at 555, 590). Nicole McCleary arrived without Petitioner and had a mango soju and a Corona beer to drink with friends from her billiards league. (R. at 554-55). Nicole McCleary had no problem with her gait, ability to communicate or fine motor coordination while at Kelly's and played several games of billiards. (R. at 556).

Nicole McCleary asked Petitioner to come to Kelly's, another bar in the SED. Pros. Ex. 1. Nicole McCleary claimed that she had planned a night out and

then planned to return to her dormitory[1], but she nonetheless brought an overnight
bag to the SED. (R. at 635). Petitioner arrived at Kelly's with his friend Jeremy
Naples between 1900 and 2000. (R. at 714). Nicole McCleary jumped up to greet
him with an enthusiastic hug. *Id.* Shortly thereafter, Petitioner and Jeremy Naples
left. (R. at 556). They went to another club in the SED called Seven. *Id.* Nicole
McCleary remained with Gloria Silva at Kelly's for a total of an hour. (R. at 748).

Nicole McCleary followed Petitioner and Jeremy Naples to Seven. *Id.*
Nicole McCleary left for Seven around one hour after Nicole McCleary declined
the opportunity to return to base with Gloria Silva and instead elected to follow
Petitioner. (R. at 749). There, Nicole McCleary had between one and two soju
slushies, three to four shots of Fireball, three to four shots of apple pie, and a shot
of vodka. (R. at 557). Fireball is a lower-alcohol content type of shot. (R. at 601).
An apple pie shot is not a shot, but is a mixed drink served in a shot glass; it is not
straight alcohol. (R. at 603). While at Seven, Jeremy Naples realized that he knew
Nicole McCleary's husband. (R. at 602). Nicole McCleary sent a "selfie"
photograph to her husband of herself and Jeremy Naples while she was at Seven.
(R. at 606). Nicole McCleary spent around two hours at Seven. (R. at 609).

After Seven, Nicole McCleary could not decide which bar she wanted to go
to next and circled the SED for a period, looking for an appropriately lively

---

[1] Dormitory is the doctrinal term in the Air Force for government provided living quarters for single or
geographically separated junior enlisted personnel.

establishment. (R. at 607). Nicole McCleary, Jeremy Naples, and Petitioner eventually went to Club Lux, also in the SED. (R. at 558). Nicole McCleary did not stumble, fall, or get sick while she was circling the SED or before going to Club Lux. (R. at 607). Nicole McCleary told the Air Force Office of Special Investigations (OSI) agent who interviewed her that she had one grape soju drink at Club Lux. (R. at 611). At trial, she claimed that she might have had a second grape soju. *Id.* For the entirety of Nicole McCleary time at Club Lux, she was conversing with Petitioner and Jeremy Naples, eating pretzels, and smoking hookah. (R. at 613). Nicole McCleary was at Club Lux for at least one hour. (*Id.*, R. at 716). Nicole McCleary claimed that, in total, she had thirteen alcoholic beverages. (R. at 559).

Nicole McCleary stated that she, Petitioner, and Jeremy Naples left Club Lux to go to Jeremy Naples's off-base apartment because she claimed curfew was quickly approaching. (R. at 559). At the time, peninsula-wide curfew regulations required all personnel in Korea to be on a military installation or inside of a private home prior to 0100.[2] *Id.* Nicole McCleary claimed that she elected to go there because there would not be any taxis available on post to bring her from the gate to her dormitory. *Id.* She claimed that she desired to avoid a long walk by herself to her dormitory once she went through the gate and was on base. (R. at 560). She

---

[2] The United States Forces Korea Commander subsequently rescinded peninsula-wide curfew regulations.

further testified that she made this decision because she would be "safer" and would have someone to ensure that she got to work on time. *Id*. She compared the distances between her approximate understanding of the location of Jeremy Naples's residence and her dormitory and did not choose her destination based upon walking distance. (R. at 560-61). After deciding to go to Jeremy Naples's residence, Nicole McCleary accompanied Petitioner and Jeremy Naples to a convenience store. (R. at 561).

Jeremy Naples testified that he, Nicole McCleary, and Petitioner went from Club Lux to 7-Eleven, a convenience store, and to a street food truck, for non-alcoholic beverages and for food. (R. at 719). Nicole McCleary wanted cigarettes and decided to buy them at the 7-Eleven. (R. at 617). Nicole McCleary, Petitioner, and Jeremy Naples walked by the Front Gate of Osan Air Base a little after 2400, which was one hour before curfew. (R. at 726). She declined an offer of a waiting and available taxi from the gate to her dormitory. (R. at 728). Instead, she elected to walk with Petitioner and Jeremy Naples to Jeremy Naples's residence. Nicole McCleary did not fall or scrape herself during her walk. (R. at 615). This walk was over uphill terrain with poorly maintained sidewalks. (R. at 729).

Nicole McCleary claimed that her memory after Club Lux was "fuzzy," but agreed that she was walking, talking, and getting cigarettes. (R. at 619). N.M.'s

purchase of cigarettes was more than an hour after she left Club Lux. *Id.* She had nothing more to drink after leaving Club Lux. *Id.*

Nicole McCleary claimed to remember nothing of the walk from the SED to Jeremy Naples's apartment. However, security cameras recorded Nicole McCleary in the garage of Jeremy Naples's apartment building. (R. at 631). Nicole McCleary high-fived Jeremy Naples and was walking competently. (R. at 631-32). Another camera captured Nicole McCleary, Petitioner, and Jeremy Naples in the elevator of Jeremy Naples's apartment at 0010. (R. at 633). Nicole McCleary was standing and was talking to Petitioner and Jeremy Naples (R. at 634). She exited the elevator without assistance. (R. at 635).[3] She then asked Petitioner and Jeremy Naples about the plumbing in his apartment and whether it was modern such that she could flush hygienic paper down the toilet. (R. at 637). She then went outside to smoke and continued to converse with Petitioner. (R. at 638-39). While smoking, Nicole McCleary realized that she needed to vomit. *Id.* She was not overcome with the urge to vomit, but left Jeremy Naples's balcony and used the toilet. (R. at 639). She then walked back outside, continued to smoke, and went back to the bathroom to vomit again. (R. at 640-41). She claimed that her last memory was of Petitioner telling her that she could sleep in Jeremy Naples's guest

---

[3] The record of trial contains the video recordings of Nicole McCleary entering Jeremy Naples's apartment. Petitioner requests that the court view these recordings showing Nicole McCleary's unmistakable competence, should the government allege that any instructional error was harmless beyond a reasonable doubt.

bedroom and that he would sleep on the couch. (R. at 641). Nicole McCleary admitted that she may have been awake and active after this point, but that she simply cannot remember events after that. (R. at 643).

Nicole McCleary claimed that she fell asleep and awoke to find her pants unbuttoned. (R. at 564). She then claimed that she awoke to find her shirt removed. (R. at 565). She claimed to be able to sense a person next to her but made no inquiry as to the identity of that person. (R. at 566). She claimed that, despite this realization, she rolled over and went back to sleep. *Id.*

Nicole McCleary's next memory is supposedly of her hands being raised above her head and her bra being removed. (R. at 566). She then went back to sleep again. (R. at 567). She then claimed to wake up to feel Petitioner's penis in her hand. *Id.* She claimed that she then woke up to feel pressure against her anus. (R. at 569). She then claimed to fall asleep and wake up again to feel pressure against her vagina. (R. at 570). She further claimed that her next memory is of waking up to find herself in the same bed as Petitioner. *Id.*

Nicole McCleary got up and smoked a cigarette with Petitioner. (R. at 576). She then called Gloria Silva (R. at 577). Nicole McCleary asked Gloria Silva to "cover for her" because she was going to be late in reporting for duty that morning. (R. at 743). Gloria Silva gave Nicole McCleary directions to the gate and met her

there. (R. at 578). Nicole McCleary initially told Gloria Silva "I'm not that dumb. I'm not that stupid. I'm a married woman." (R. at 744).

Nicole McCleary told Gloria Silva that she was in danger of breaking curfew and that is why she stayed at Jeremy Naples's residence. (R. at 754). She stated to Gloria Silva that she slept on the sofa in Jeremy Naples's residence, not the bedroom. (R. at 755). She further elaborated on her earlier statement by stating "I'm not that dumb. I'm a married woman. I would never do this" but also "whatever happened, happened." (R. at 743, 755). Gloria Silva suggested a call to the Sexual Assault Response Coordinator (SARC). (R. at 745). Nicole McCleary agreed to contact the SARC. *Id.* Nicole McCleary had not stated that she had been sexually assaulted at the time Gloria Silva suggested contacting the SARC and had not requested SARC assistance. (R. at 751). Gloria Silva told Nicole McCleary not to shower because of the need to preserve evidence. (R. at 752). Nicole McCleary disregarded this request and showered. (R. at 681).

While Nicole McCleary showered, she called her husband. She told her husband that she went to sleep on the couch, got up to throw up, and then ended up in bed with Petitioner. (R. at 761). She told her husband that she awoke to Petitioner attempting to have sexual intercourse with her and that she attempted to stop Petitioner from engaging in sexual intercourse with her. *Id.*

Nicole McCleary subsequently had a medical appointment after meeting with the SARC. (R. at 651-52). She told Gloria Silva that she underwent sexual assault treatment at the Osan Medical Treatment Facility [MTF]. (R. at 756). This statement, however, was not accurate as Nicole McCleary, in fact, was at the MTF for a pre-arranged appointment involving treatment for high blood pressure. (R. at 756). She omitted this visit entirely from her narrative of events from the morning of the incident. (R. at 652). She then went to work. (R. at 579). She underwent a Sexual Assault Nurse Examination (SANE) and an OSI interview a few days later. *Id.*

On June 23, 2017, Capt. H.P. completed the SANE examination in this case. (R. at 776). Nicole McCleary described no injuries. (R. at 779). At trial, the government admitted the entirety of that report at Pros. Ex. 3 without objection from the defense. (R. at 776).

Nicole McCleary has a high tolerance for alcohol and requires more than ten drinks before she becomes intoxicated. (R. at 759). She is a frequent and experienced drinker. *Id.* She has particularized experience with drinking soju. (R. at 760).

Nicole McCleary testified that, in the immediate run up to the alleged sexual assault, she could appreciate her circumstances and surroundings, could walk, and knew what was occurring around her. (R. at 658). This ability continued after she

had finished vomiting. (R. at 660). Nicole McCleary testified that she could not

"confidently say that (she was not) awake, active, engaged [in the charged sex act]

(and)... just doesn't remember it." (R. at 643). She further testified that it is

possible that she knew that Petitioner requested to anally penetrate her, that she

knew of the request, and that she declined it. *Id.*

### Petitioner's procedural history

11.    On February 11-12 and March 18-22, 2019, a military judge and panel

of officer and enlisted members, sitting as a general court-martial, tried Appellant

at Moody Air Force Base, Georgia. Appéllant entered a plea of not guilty to all

charges and specifications.

12.    No medical expert testified at trial as to the effect of Nicole

McCleary's vomiting upon her blood alcohol level and no expert testified that

Nicole McCleary's vomiting was ipso facto due to her incapacity or even due to

her alcohol consumption, as opposed to food poisoning from street food or some

other cause.

13.    The military judge instructed the panel that a two-thirds' concurrence

was required to return a guilty verdict and did not instruct the panel that its verdict

must be unanimous. (R. at 967). Appellant did not object to this instruction. (R.

at 879).

14.    Contrary to his pleas, the panel convicted Appellant of one specification of sexual assault and one specification of attempted sexual assault, in violation of Articles 80 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 920 (2016) [hereinafter UCMJ].  The panel sentenced appellant to be reduced to the grade of E-4, to be confined for 34 months, and to be dishonorably discharged.  (R. at 1174).  The convening authority approved the sentence as adjudged.

15.    Mr. Brown timely appealed to the U.S. Air Force Court of Criminal Appeals [hereinafter AFCCA].  On August 16, 2021, the Air Force Court affirmed the findings and the sentence in *United States v. Brown*, 2021 CCA Lexis 414 (A.F. Ct. Crim. App. Aug 16, 2021)(unrep.).  Appellant timely moved the Air Force court to reconsider its decision.  The Air Force court denied reconsideration via a re-issued order on August 7, 2021.

16.    Mr. Brown timely appealed to the Court of Appeals for the Armed Forces and filed his Petition for a Grant of Review on October 17, 2021 [hereinafter CAAF].  CAAF denied Mr. Brown a grant of review on January 5, 2022.  *United States v. Brown*, __ M.J. ___ (2022), 2022 CAAF LEXIS 8 (C.A.A.F. Jan. 5, 2022)(slip op.).  Petitioner therefore has no further military courts from which he may request review.

IV.    **CLAIMS FOR RELIEF**

    A.    **Claim One:**
        **The court-martial panel which tried Petitioner returned findings in violation of the due process clause because the Military Judge permitted the panel to return its findings by less than a unanimous verdict.  The panel's findings were the product of a fundamental due process violation therefore void.**

*Standard of Review*

This court reviews de novo allegations that a court-martial's structure or jurisdiction is unconstitutional.  *Larrabee v. Braithwaite*, 502 F. Supp. 3d 322, 327 (D.D.C. 2020).

*Law & Analysis*

Petitioner's court-martial convicted him by a process which violated his 5th Amendment procedural due process and equal protection rights.  Jury verdicts by less than a unanimous verdict violate the due process clause of the Constitution. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1391 (2020).  The Supreme Court's decision in *Ramos* "repudiated [its] decision in *Apodaca v. Oregon*, 406 U.S. 404 (1972), which had allowed non-unanimous juries in state criminal trials." *Edwards v. Vannoy*, 141 S. Ct. 1547, 1551 (2021).  The result in *Ramos* is "not dictated by precedent or apparent to all reasonable jurists" previously—was on par with other "landmark" cases of criminal procedure "like *Mapp, Miranda, Duncan, Batson,* [and] *Crawford* . . . ." *Id.* at 1555-56, 1559.

"An appellant gets the benefit of changes to the law between the time of trial

and the time of his appeal." *United States v. Tovarchavez*, 78 M.J. 458, 462

(C.A.A.F. 2019). Although Appellant did not preserve this objection at trial, that is

immaterial here because his court-martial took place prior to the Supreme Court's

decision in *Ramos*. He is entitled to the benefit conferred by this change in the law

while his case was still on direct appeal because he raised it before the military

courts and is therefore not in procedural default. *Edwards*, 141 S. Ct. at 1554;

*Brown*, 2021 CCA Lexis 414, *4.

The right to a unanimous verdict, whether grounded in the Fifth

Amendment, Sixth Amendment, or both, is a matter of constitutional concern. The

Government bears the burden of establishing that the military judge's failure to

instruct that a guilty verdict must be unanimous is subject to the harmless beyond a

reasonable doubt standard. Since it is unknown by what tally Appellant was

convicted, the Government cannot meet this high bar and reversal is required.

Prior to *Ramos* and *Edwards*, military courts had held that "[t]he Sixth

Amendment right to a jury trial does not apply to courts-martial[.]" *United States v.

Easton*, 71 M.J. 168, 175 (C.A.A.F. 2012). This is not the end of the analysis,

however, because although a Servicemember may not have the right to have the

common law jury known to the founders, he does have the right to procedural due

process. A Sixth Amendment right may apply to a court-martial through the Due

Process Clause of the Fifth Amendment. See e.g., *United States v. Santiago-

Davilla*, 26 M.J. 380, 390 (C.M.A. 1988) (holding that the Supreme Court's

decision in Batson v. Kentucky applies to courts-martial by virtue of due process).

Irrespective of whether the Sixth Amendment entitled him to a jury-like panel of

members, once Congress panels as a court-martial's fact-finding body, the Fifth

Amendment's Due Process Clause required that panel to make findings of guilt

unanimously.  *Cf. Evitts v. Lucey*, 469 U.S. 387, 393 (1985).  "[A] military

criminal appeal is a creature . . . solely of statutory origin, conferred neither by the

Constitution nor the common law. However, once granted, the right of appeals

must be attended with the safeguards of constitutional due process."  *United States*

*v. Rodriguez-Amy*, 19 M.J. 177, 178 (C.M.A. 1985)(internal quotations and

citations omitted).

In determining whether a particular right is demanded at court-martial as a

matter of due process, this Court asks "whether the factors militating in

favor of [the right] are so extraordinarily weighty as to overcome the balance

struck by Congress." *Weiss v. United States*, 510 U.S. 163, 177-78 (1994) (quoting

*Middendorf v. Henry*, 425 U.S. 25, 44 (1976)). The right to a unanimous guilty

verdict satisfies this test.  The unanimity of a verdict in a criminal case is

inextricably interwoven with the required measure of proof.  To sustain the validity

of a verdict by less than all of the jurors is to destroy this test of proof.  There

cannot be a verdict supported by proof beyond a reasonable doubt if one or more

jurors remain reasonably in doubt as to guilt. It would be a contradiction in terms.

The unanimity requirement is even *more* important in courts-martial because they utilize panels with fewer than twelve members. "Statistical studies suggest that the risk of convicting an innocent person . . . rises as the size of the jury diminishes." *Ballew v. Georgia*, 435 U.S. 223, 234 (1978). While "the 12-man requirement cannot be regarded as an indispensable component of the Sixth Amendment," *Williams v. Florida*, 399 U.S. 78, 99 (1970), unanimity of verdict is indispensable precisely because the findings of smaller panels are more likely to be incorrect.

The holding in *Ramos* is not limited to the confines of the Sixth Amendment. Instead, unanimity is required as a matter of the Fifth Amendment because the right to a unanimous jury verdict is one incorporated to the States. A determination that a right is required as a matter of due process is a fundamental prerequisite to incorporating the right. *Cf. Ramos*, 140 S. Ct. at 1423-24 (Thomas, J., concurring in the judgement) (agreeing that unanimity was required as a matter of the Fourteenth Amendment's Privileges or Immunities Clause but departing from the five-justice majority's holding that it was required as a result of "*due process* incorporation.") (emphasis added). Rights "fundamental to *our* [i.e., American] scheme of ordered liberty . . . whether this right is deeply rooted in the Nation's history and tradition" are incorporated to the states because they implicate the Due Process clause. *McDonald v. City of Chi.*, 561 U.S. 742, 767 (2010) (internal quotations omitted).

Appellant was tried before an eight-member panel consisting of two officers and six enlisted personnel. (R. at 418). Prior to electing trial before members, Appellant was advised by the military judge that his court-martial would be composed of at least five members, and that a guilty verdict required the concurrence of at least two-thirds of the members. (R. at 275). The military judge instructed the members that a two-thirds' concurrence was required to return a guilty verdict. (R. at 967). The members presumably followed this instruction. *United States v. Holt*, 33 M.J. 400, 408 (CMA 1991). This court should therefore find that the members employed a non-unanimous procedure for determining Petitioner's guilt. This procedure is fundamentally violative of the due process clause and renders the panel's findings void. Therefore, this court should grant to Petitioner the requested writ.

In the alternative, this court should grant to Petitioner his requested writ on equal protection grounds.

> **B.    Claim Two:**
> **The Military Judge Erred in Instructing the Panel, Over Objection, as to uncharged Theories of Criminal Liability. These instructions were a violation of Petitioner's due process rights.**

### *Standard of Review*

This court will grant to a Petitioner a writ of habeas corpus when instructional error violates his due process rights, unless the error is harmless beyond a reasonable doubt. *Monk v. Zelez*, 901 F.2d 885, 888 (10th. Cir. 1990).

*Law & Analysis*

A constitutional claim is subject to the further review of an Article III court because it is both "substantial and largely free of factual questions." *Mendrano v. Smith*, 797 F.2d 1538, 1542, n. 6 (10th Cir. 1986). "Consideration by the military of such [an issue] will not preclude judicial review for the military must accord to its personnel the protections of basic constitutional rights essential to a fair trial and the guarantee of due process of law." *Calley v. Callaway*, 519 F.2d 184, 203 (5th Cir. 1975). "Where a military prisoner is in custody by reason of an alleged constitutional violation, 'the constitutional courts of the United States have the power and are under the duty to make inquiry.'" *Monk*, 901 F.2d at 888 <u>citing</u> *Wallis v. O'Kier*, 491 F.2d 1323, 1325 (10th Cir. 1974).

A criminal conviction cannot be affirmed based on a theory of liability that was not charged. *United States v. English*, 79 M.J. 116, 121-22 (C.A.A.F. 2019); *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (<u>citing</u> *Chiarella v. United States*, 445 U.S. 222, 236-37 (1980)). "To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process." *Dunn v. United States*, 442 U.S. 100, 106 (1979). It is immaterial whether the same verdict may have been obtained on a different theory because "appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial." *Id.* at 107. Rather, "it is as much a violation of due process to send an

accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." *Id.* (quoting *Cole v. Arkansas*, 333 U.S. 196, 201 (1948)).

When known facts indicate separate and mutually exclusive theories of criminal liability, an exigency of proof exists.  In such cases, the Government may properly charge both offenses and prosecute the accused under alternate theories of criminal liability.  Nevertheless, the Government is required to refer both offenses to trial and cannot rely upon an uncharged theory of liability.  *United States v. Byard*, 29 M.J. 803, 808 n.18 (Army Ct. Crim. App. 1989) (emphasis in original); see also *United States v. Sager*, 76 M.J. 158 (C.A.A.F. 2017).  The burden to prove an individual's "legal inability to consent" and the burden to prove that an individual "did not, in fact, consent" are not the same burden.  *United States v. Riggins*, 75 M.J. 78, 84 (C.A.A.F. 2016).  When the government drafts a charge so as to specify a particular theory of liability, it may not reach outside the charged theory of liability to convict an Servicemember under another, uncharged theory of liability.  *United States v. Brantley*, 2017 CCA LEXIS 742, *9 (A. Ct. Crim. App. 30 Nov. 2017)(mem. op.)(on remand)(unrep.)

1. Military Judge's Bodily Harm Instruction

The government referred sexual offenses under a theory that Nicole McCleary was "incapable of consenting… due to impairment by alcohol" and did

not refer any charge concerning Nicole McCleary under a theory of bodily harm

through withheld consent. (R. at Charge Sheet).  Trial Defense Counsel requested

that the military judge limit her instruction to competence.  (R. at 858).  The

military judge, however, instructed the panel both as to incompetence and also as

to actual withholding of consent, over the objection of the defense counsel.

> Lack of consent may be inferred based on the
> circumstances. All the surrounding circumstances
> are to be considered in determining whether a
> person gave consent, or whether a person did not
> resist or ceased to resist only because of another
> person's actions.

(R. at 883).

The military judge erred in instructing the panel as to lack of consent when

incapacitation was the charged theory.  Bodily harm through "lack of consent" is a

theory of criminal liability that is different than "unable to consent" due to

intoxication.  *United States v. Jones*, 2015 CCA LEXIS 86, *27 (A.F. Ct. Crim.

App. 13 Mar. 2015)(unrep.).  A prosecutrix who withholds consent is able to give

consent.  *Id*.  Therefore, the military judge erred in instructing the panel to consider

whether N.M. "gave consent" because the only issue before the panel was whether

N.M. *could* give consent, not whether she actually did it.[4]

---

[4] *Cf. United States v. Mader*, 81 M.J. 105, 108 (C.A.A.F. 2021) (recognizing that
the Government had complete discretion in charging the appellant, to include
charging a different theory of liability "which would have eliminated the
opportunity to raise a consent defense," but because it proceeded on a theory of

This error was not harmless by any evidentiary standard and was certainly not harmless beyond a reasonable doubt. Nicole McCleary testified that she could not "confidently say that (she was not) awake, active, engaged [in the charged sex act] (and)... just doesn't remember it" and testified that she may have actually declined anal penetration. (R. at 643). Had the military judge refrained from instructing the panel to consider "whether Nicole McCleary gave consent," (R. at 883), it is inconceivable how the panel could be convinced beyond a reasonable doubt that Nicole McCleary was incapacitated because Nicole McCleary admitted that it was possible that she had capacity but simply didn't remember. Therefore, this court should grant the request writ for the purpose of finding that the military judge's instruction constituted error and requires reversal.

2. Military Judge's Asleep and Unconscious Instruction

The military judge's instruction was further erroneous because the government charged, and was required to prove, incapacity "due to impairment by alcohol." (R. at Charge Sheet). An accused may be acquitted of sexual assault of an incompetent person but convicted of sexual assault of a sleeping person. *United States v. Gilpin*, 2019 CCA LEXIS 515, *2 (N.M. Ct. Crim. App. 30 Dec. 2019) (unrep). Therefore, evidence that N.M. was asleep might be evidence that she was

---

liability where consent *was* a defense, the Government accepted the risk of the charging decision it *did* make).

impaired by alcohol, but it could not be transformed into a mandatory finding

because an "asleep" theory was not charged. The government limited itself to

proving incapacity by reason of intoxication because it charged that N.M. was

incapable of consent "due to impairment by alcohol." (R. at Charge Sheet). Had

the government charged multiple causes of incapacity, the panel would have been

able to choose amongst the varying causes. *Sager*, 76 M.J. at 162. Here, however,

because the government charged that Nicole McCleary was incapacitated due to

her intoxication, it was limited to proving its charge by that theory. *Id.* The

military judge's instructions were erroneous because they permitted the panel to

convict appellant if it found that N.M. was incapacitated by sleep without finding

that alcohol consumption caused either N.M.'s sleep or N.M.'s incapacity.

The military judge's instruction converted a permissive inference, that sleep

is evidence of incapacitation by alcohol, into a mandatory finding. A military

judge commits error of a constitutional dimension when he instructs that a

permissive inference is a mandatory one because such an instruction shifts the

burden of proof. *United States v. Harper*, 22 M.J. 157, 162 (C.M.A. 1986). Here,

the military judge's instruction transformed evidence of sleep, that the panel could

use to find incapacity due to alcohol intoxication, into a mandatory finding which

required the panel to find that an asleep person is always an incompetent person

due to alcohol intoxication. The military judge erred when she denied the defense

request for a specially tailored instruction and committed instructional error of a

constitutional dimension which was not harmless by any standard. (R. at 876-77). This court should therefore grant the requested writ for the purpose of setting aside and dismissing the findings.

> **C.    Claim Three:**
> **The military judge's Mil. R. Evid. 412 ruling denied to Petitioner procedural due process because it excluded from evidence constitutionally required exculpatory evidence.**

Petitioner will move for leave of this court to file a separate brief in support of this claim under seal because the military judge sealed the relevant portions of the record.

**PRAYER FOR RELIEF**

Mr. Brown prays that this Court grant the following relief:

(a)    Assume jurisdiction over this matter;
(b)    Order Respondent to show cause why the writ of habeas corpus should not be granted and set a hearing on this matter;
(c)    Grant the writ of habeas corpus, set aside and dismiss the findings and dismiss the sentence.
(d)    Award reasonable attorney's fees, costs, and other disbursements; and
(e)    Grant any other additional relief that this court deems just and proper.

/s/
Robert Feldmeier
Attorney-at-law
THE LAW OFFICES OF ROBERT FELDMEIER
2920 Forestville Road, Suite 100-1076
Raleigh, North Carolina 27616

Dated: January 17, 2022

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Instructions

1. **Who Should Use This Form**. You should use this form if
   - you are a federal prisoner and you wish to challenge the way your sentence is being carried out *(for example, you claim that the Bureau of Prisons miscalculated your sentence or failed to properly award good time credits)*;
   - you are in federal or state custody because of something other than a judgment of conviction *(for example, you are in pretrial detention or are awaiting extradition)*; or
   - you are alleging that you are illegally detained in immigration custody.

2. **Who Should Not Use This Form**. You should not use this form if
   - you are challenging the validity of a federal judgment of conviction and sentence *(these challenges are generally raised in a motion under 28 U.S.C. § 2255)*;
   - you are challenging the validity of a state judgment of conviction and sentence *(these challenges are generally raised in a petition under 28 U.S.C. § 2254)*; or
   - you are challenging a final order of removal in an immigration case *(these challenges are generally raised in a petition for review directly with a United States Court of Appeals)*.

3. **Preparing the Petition**. The petition must be typed or neatly written, and you must sign and date it under penalty of perjury. **A false statement may lead to prosecution.**

4. **Answer all the questions.** You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit any legal arguments, you must submit them in a separate memorandum. Be aware that any such memorandum may be subject to page limits set forth in the local rules of the court where you file this petition. If you attach additional pages, number the pages and identify which section of the petition is being continued. All filings must be submitted on paper sized 8½ by 11 inches. **Do not use the back of any page.**

5. **Supporting Documents**. In addition to your petition, you must send to the court a copy of the decisions you are challenging and a copy of any briefs or administrative remedy forms filed in your case.

6. **Required Filing Fee**. You must include the $5 filing fee required by 28 U.S.C. § 1914(a). If you are unable to pay the filing fee, you must ask the court for permission to proceed in forma pauperis – that is, as a person who cannot pay the filing fee – by submitting the documents that the court requires.

7. **Submitting Documents to the Court**. Mail your petition and _____ copies to the clerk of the United States District Court for the district and division in which you are confined. For a list of districts and divisions, see 28 U.S.C. §§ 81-131. All copies must be identical to the original. Copies may be legibly handwritten.

   If you want a file-stamped copy of the petition, you must enclose an additional copy of the petition and ask the court to file-stamp it and return it to you.

8. **Change of Address**. You must immediately notify the court in writing of any change of address. If you do not, the court may dismiss your case.